## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JERRY WORD,**

                    **Plaintiff,**

**v.**

**CITY OF DETROIT, *et al*.**

                    **Defendants.**

_____/

                    **Case No. 2:16-cv-11423**

                    **Judge Laurie J. Michelson**

                    **Magistrate Judge Anthony P. Patti**

## REPORT AND RECOMMENDATION REGARDING THE CITY OF DETROIT DEFENDANTS' DISPOSITIVE MOTIONS (DE 3, DE 8)

**I.     RECOMMENDATION**:  The Court should grant Defendants City of Detroit, Michael Duggan and Detroit Police Departments' May 5, 2016 joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (DE 3) and grant Defendant Woodward, Newton and King's May 20, 2016 joint motion to dismiss in lieu of an answer (DE 8).

**II.    REPORT:**

    **A.     Four of the named Defendants have yet to appear.**

On January 21, 2016, Jerry Word filed this lawsuit in Wayne County Circuit Court against several defendants, including:  the City of Detroit, Michael Duggan, the Detroit Police Department (DPD), three named officers (Carl Woodward, (Richard) Newton, Sgt. Errol King), four unidentified officers (described as

employed at the Detroit Detention Center (DDC)),[1] and what appear to be four resident citizens (Ann Conway (Word), Michelle Bradford, Perry Conway and Demetrius Conway).[2]  (DE 1-1 ¶¶ 2-11; *see also* Case No. 16-000863-CZ.)  The events underlying this lawsuit stem from Plaintiff's May 9, 2014 arrest in connection with what can best be described as a domestic dispute involving alcohol and drugs.  (DE 1-1 ¶¶ 14-48, DE 3-3 at 2, DE 8-4 at 2, DE 11 at 3 ¶¶ 14-15.)

On April 20, 2016, Defendant City of Detroit filed an answer and removed the case to this Court.  (DE 1-2, DE 1.)  On May 24, 2016, although several parties had already appeared, the Court entered an order which, in part, required Plaintiff to show cause as to service upon the four apparent resident defendants who had yet to appear.  (DE 9.)  Plaintiff responded on June 28, 2016.  (DE 11 at 4-5, 9.)[3]

---

[1] The DDC "operates under an interagency agreement between the [DPD] and the Michigan Department of Corrections."  *See* http://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-354404--,00.html.

[2] According to the May 9, 2014 DPD Arrest Report, Ann Celeste Word was Plaintiff's spouse, and Demetrius Conway is the son of the victim and arrestee. (*See* DE 3-3, DE 8-4 (DPD Arrest Report).)

[3] Plaintiff claims that these four defendants have been served and are in default, in support of which he cites to returns of service and a motion for default judgment filed in state court, and he requests that this Court consider his request for entry of default judgment.  (*See* DE 11 ¶¶ 22-28, DE 11 ¶ 29, DE 11 at 9; DE 11 at 14-17 (proofs of service), DE 11 at 20-28 (Default Requests), DE 11 at 30-34 (Motion to

Should the 42 U.S.C. § 1983 case against the state-actor defendants survive the instant motions, I will address the issue of these non-state actor defendants' appearance, as well as the issue of identification of the 4 unidentified officers (*see* DE 11 ¶¶ 20-21), under separate cover.

### B.      Six of the Defendants have filed dispositive motions.

Judge Michelson has referred this case to me for pretrial matters.  Currently pending before the Court are Defendants City of Detroit, Michael Duggan and DPD's May 5, 2016 joint motion to dismiss, and Defendants Woodward, Newton and King's May 20, 2016 joint motion to dismiss in lieu of an answer.  Together, these motions challenge Plaintiff's complaint on the bases that:  (1) it fails to comply with Fed. R. Civ. P. 8 and/or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); (2) it names an improper party; (3) it fails to establish the personal involvement of certain defendants; or, (4) certain defendants are entitled to qualified immunity.  (*See*, *i.e.*, DE 3-1 at 10-13, DE 8-1 at 7-18.)

### C.      Dispositive Motion Practice

#### 1.      Fed. R. Civ. P. 12(b)(6)

Defendants City of Detroit, Duggan and DPD bring their motion pursuant to Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Federal Rule of

---

Enter Default Judgment); *see also Word v. City of Detroit*, *et al.*, Register of Actions, Case No. 16-000863-CZ (Wayne County Circuit Court).)

Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Also, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

### 2.    Fed. R. Civ. P. 56

Defendants Woodward, Newton and King bring their motion pursuant to both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.  Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words,

summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D.   Discussion

#### 1.   The alleged facts underlying Plaintiff's complaint

The facts underlying Plaintiff's complaint begin on or about May 9, 2014 at his home, where two police officers allegedly placed him under arrest, apparently after his brother-in-law accused Plaintiff of domestic violence.  (DE 1-1 at 5 ¶¶ 17-23.)  According to Plaintiff, he was taken to DDC and charged with assault and battery/simple assault.  (DE 1-1 ¶¶ 25-26.)

While in a cell at DDC, Plaintiff became ill.  He knocked and kicked on the door, four unidentified officers appeared, and these officers opened the door and shot Plaintiff twice with a Taser, after which Plaintiff fell to the floor.  (DE 1-1 ¶¶ 27-30.)[5]  Plaintiff claims that two of the unidentified officers dragged him to another cell, where he was placed in a restraint chair with his body, arms, legs and waist strapped and where "his back was bent inward like a bow."  According to Plaintiff, he remained in that position for approximately three days, during which

---

[5] In his June 28, 2016 filing, Plaintiff claims he does not know the identity of these officers and explains that he will "undoubtedly learn the identities of these individuals and properly bring them into the action through Discovery."  (DE 11 ¶ 20; *see also* DE 11 ¶ 21.)

he "was not allowed to eat, use the bathroom or drink water." Thereafter, Plaintiff was removed from the restraint chair, placed in another cell for a few hours, and, then, released from custody; he was told "to go home without any means of transportation or cash in his pocket to get there." (DE 1-1 ¶¶ 31-35; *see also* DE 1-1 ¶ 36.)

Plaintiff contends that, when he arrived home and asked his wife, Ann Conway Word, "what was that episode all about[,]" she responded, "I think I made a mistake[,]" and "I fell coming out of the bathroom." (DE 1-1 ¶ 37.) Citing the DPD Arrest Report, Plaintiff claims the story given to the DPD "was quite different." (DE 1-1 ¶ 38; *see also* DE 1-1 ¶¶ 39-47, DE 3-3, DE 8-4.) According to Plaintiff, he was "never formally charged with the offenses he was arrested for in this case." (DE 1-1 ¶ 48.)

### 2. Plaintiff's federal causes of action as to the state actor defendants

As the first page of Plaintiff's complaint indicates, he brings this action, at least in part, pursuant to 42 U.S.C. § 1983 ("Civil action for deprivation of rights") and 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights"). (DE 1-1 at 3.) By way of background, "[t]he purpose of § 1983 is to deter *state actors* from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504

U.S. 158, 161 (1992) (citing *Carey v. Piphus,* 435 U.S. 247, 254–257 (1978))
(emphasis added).

"Anyone whose conduct is 'fairly attributable to the state' can be sued as a
state actor under § 1983." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012).  Given
that the motions currently under the Court's consideration have been filed by the
City of Detroit, Mayor Duggan, the DPD and three DPD Police Officers, it is
helpful to note:

> "To prevail on a § 1983 claim, a plaintiff must establish that a person
> acting under color of state law deprived the plaintiff of a right secured
> by the Constitution or laws of the United States." *Waters v. City of
> Morristown,* 242 F.3d 353, 358–59 (6th Cir.2001) (citation omitted).
> Accordingly, a determination as to whether the defendant acted under
> the color of state law is a threshold matter. *Id.* at 359. In *Lugar v.
> Edmondson Oil Co.,* the Supreme Court held that "the deprivation
> must be caused by the exercise of some right or privilege created by
> the State or by a rule of conduct imposed by the state or by a person
> for whom the State is responsible." 457 U.S. 922, 937[] (1982).
> Moreover, "the party charged with a deprivation must be a person
> who may fairly be said to be a state actor." *Id.* In other words, "a
> private entity can be held to constitutional standards when its actions
> so approximate state action that they may be fairly attributed to the
> state." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000).

*Wilkerson v. Warner*, 545 F. App'x 413, 419 (6th Cir. 2013).  Since the six
defendants currently before this Court do not argue that they are not state actors,
the Court will proceed on the assumption that they are.[6]

---

[6] *See also Flagg v. City of Detroit*, 827 F. Supp. 2d 765, 792 (E.D. Mich. 2011),
*aff'd*, 715 F.3d 165 (6th Cir. 2013) ("The parties here agree that the Defendant City
of Detroit and its former mayor . . . both qualify as state actors under the second

Although the "causes of action" section of Plaintiff's complaint mentions the constitutions of both the State of Michigan and the United States of America, the Court reads this *pro se* complaint as required by *Haines v. Kerner*, 404 U.S. 519, 520 (1972) and interprets these paragraphs as alleging the following *federal claims* as to the *state actor defendants*:   false imprisonment; conspiracy; failure to act;[7] failure to properly train; excessive force; and inhumane conditions of confinement. (DE 1-1 at 9-10 ¶ 49-55; *see also* DE 11 ¶ 36.)  This interpretation is supported by Plaintiff's explanation in response that there were violations of his constitutional rights not to be "falsely imprisoned[,]" or "abused and tortured at the hands of the Defendants under color of state law[,]" and that he advised Defendants that "he did not commit the offense which was alleged against him . . .[,]" but they "disregarded this fact."  (DE 11 ¶¶ 32, 34.)[8]

---

prong of this [42 U.S.C. § 1983] standard."); *Myers v. Hensley*, No. 3:07 CV 1529, 2010 WL 3522492, at *4 (N.D. Ohio Aug. 2, 2010), *report and recommendation adopted*, No. 3:07 CV 1529, 2010 WL 3522490 (N.D. Ohio Sept. 8, 2010) ("In this case, Defendants Hensley and Rowe may be said to have fairly exercised power made possible by their status and authority of state law. The Magistrate finds that the mayor and chief of police are state actors who acted under color of state law.").

[7] "The failure to provide medical assistance is not actionable under § 1983 for the same reason that the failure to intervene in the fight is not: in neither case did the state actor *cause* the injury of which plaintiff complains."  *Tucker v. Callahan*, 867 F.2d 909, 914 (6th Cir. 1989).

[8] Plaintiff's complaint also sets forth various claims for damages, which omit specific mention of Defendants Duggan, Newton and King.  (*See* DE 1-1 ¶¶ 56-63.)

### 3.  Defendants Woodward, Newton and King (DE 8)

### a.  Errol King

The complaint describes Defendant King as "a supervising officer employed with the [DPD] in the 8th Precinct."  (DE 1-1 ¶ 6.)  Within the causes of action, Plaintiff contends that he was falsely accused by several defendants, including King, which then caused Plaintiff to be falsely imprisoned at the DDC for approximately three days.  (DE 1-1 ¶ 49.)  Defendants urge the Court to dismiss Plaintiff's claims against Defendant King on the basis that he "was not personally involved in the alleged constitutional deprivations[.]"  (DE 8-1 at 7-8.)

"[T]o state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants."  *Bennett v. Schroeder*, 99 F. App'x 707, 712–713 (6th Cir. 2004) (summary judgment).  "'At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'"  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984)).

Plaintiff argues that the complaint against Defendant King should not be dismissed in its entirety, because he "is a coconspirator in this complaint and was the Supervising Officer in charge who authorized the arrest and approved the

Police Arrest Report." (DE 11 ¶¶ 11-12.) In that regard, Plaintiff's complaint alleges:

> That [Defendant King and others], did conspire and confederate together with each other, to deny the Plaintiff his constitutional right to liberty; by falsely imprisoning him for alleged violations for which he did not commit, to wit; (false imprisonment), the same caused the Plaintiff to be imprisoned in violation of Title 42 [U.S.C.] § 1985 of the United States Code.

(DE 1-1 at 9 ¶ 50.)

Here, the Court should conclude that Plaintiff's claim(s) against Defendant King do not survive his combined Rule 12(b)(6) and Rule 56 motion. (DE 8.) First, Plaintiff has not alleged a conspiracy claim against Defendant King. "'It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983' or *Bivens*." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)). Also, "[a] § 1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.'" *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)). To the extent Plaintiff intends to bring a false accusation or conspiracy claim against Defendant King, paragraph 49 of Plaintiff's complaint is vague in describing the alleged "accusation" by King, is conclusory, and does not allege a "class-based

discriminatory animus." This cause is not aided by paragraph 50's broad assertion that Defendants "falsely imprison[ed] him for alleged violations . . . which he did not commit," nor is it aided by paragraph 51's allegation of "fraudulent and unfounded charges which denied Plaintiff his liberty." It is likewise not aided by paragraph 55's general assertion that "all Defendants named in this action, through their action or inactions, did in fact violate[] the Plaintiff's Constitutional Rights by falsely imprisoning and tor[tur]ing him . . . ." These paragraphs do not sufficiently allege a false accusation or conspiracy claim against King as to which relief may be granted.

Second, Plaintiff has not alleged Defendant King's personal involvement in the matters of which Plaintiff complains. In addition to the foregoing vague and/or conclusory paragraphs about false accusations and false imprisonment, Plaintiff alleges that "the above named Defendants did in fact cause upon the Plaintiff[] severe physic[al], emotional and mental duress by their actions or failure to act, which caused the Plaintiff pain and suffering through fraudulent and unfounded charges which denied Plaintiff his liberty." (DE 1-1 at ¶ 51.) Nevertheless, Plaintiff alleges that Defendant King is a "supervising officer," and, as discussed above, the references to King in the "causes of action" are vague and/or conclusory. (DE 1-1 ¶¶ 6, 49; *see also* DE 1-1 ¶¶ 50-51, 55.) As such, Plaintiff "has not alleged that [King] committed any actual acts, nor has [Plaintiff] averred

that [King] acquiesced in the conduct of [his] employees." *Grinter*, 532 F.3d at 575.

To be sure, Plaintiff states in his responding brief that King "authorized the arrest and approved the Police Arrest Report[,]" citing the arrest report itself. (DE 11 ¶ 12.) However, a conclusion that Plaintiff's complaint does not sufficiently allege King's personal involvement is buttressed by the DPD Daily Detail for May 9, 2017 attached to Defendants' motion. While it does show that Police Officer Woodward and Police Officer Newton were assigned to "strike force[,]" it does not show that King was on assignment that day. (DE 8-2, DE 8-5.) Instead, Errol King only appears to be the officer who, early in the morning of May 10, 2014, verified and approved the May 9, 2014 DPD Arrest Report, a clerical function at best. (DE 3-3, DE 8-4 at 2.)[9] Thus, on the basis of the pleadings, the Court should conclude that Plaintiff has not sufficiently alleged Defendant King's personal involvement in the matters of which Plaintiff complains.

---

[9] The Court is permitted to treat the arrest report as part of the pleadings, because it is attached to Defendants' motions to dismiss (DE 3-3, DE 8-4), is specifically and at length referred to in Plaintiff's complaint (*see* DE 1-1, ¶¶ 38-47), and it is central to Plaintiff's claims. *See Eastman v. Cincinnati Musicians Ass'n, Local No. 1*, 151 F. App'x 414, 416 (6th Cir. 2005), *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 n.2 (2002).

In sum, Defendant King is entitled to dismissal of the claims against him, because Plaintiff has not sufficiently alleged a false accusation or conspiracy claim against King, nor has Plaintiff sufficiently alleged King's personal involvement.

### b.      Carl Woodward and Richard Newton

Carl Woodward was the reporting officer, and Richard Newton was the assisting officer.  (DE 3-3, DE 8-4 at 2.)  In his complaint, Plaintiff describes Defendants Woodward and Newton as police officers employed by the City of Detroit and DPD, respectively.  (*See* DE 1-1 ¶¶ 4-5.)  Given the allegations in Plaintiff's complaint, the Court assumes Defendants Woodward and Newton are the police officers who exited their cars, handcuffed Plaintiff, put him in the squad car, placed him under arrest for assault and battery/simple assault and apparently transported him to DDC.  (DE 1-1 ¶¶ 23, 25-26.)  Plaintiff claims that Woodward, Newton and others falsely accused Plaintiff, which resulted in him being falsely imprisoned at the DDC for approximately three days.  (DE 1-1 ¶ 49.)  Moreover, while the "damages," section does not make a specific claim as to Defendant Newton, it does assert that Defendant Woodward "is liable to the Plaintiff for false arrest and false imprisonment."  (DE 1-1 ¶ 58.)

Defendants contend that Woodward and Newton are entitled to qualified immunity as to Plaintiff's failure to investigate, false arrest/false imprisonment, and intentional infliction of emotional distress claims, on the basis that their

actions were "objectively reasonable." (DE 8-1 at 8-17.) As to these defendants,

Plaintiff responds:

> 14. Officer Carl Woodward was an initiator and made the unlawful arrest; transported the Plaintiff to the Detroit Detention Facility where the Plaintiff was assaulted by the four unidentified officers once detained there; Plaintiff duly advised Officer Woodward that he did not commit the offense that his wife was charging, but [Woodward] *arrested the Plaintiff anyway*.

> 15. Officer Woodward was aware that Ms. Conway (Word) was under the influence of alcohol and drugs obtained from her sister, and was probably not in sound mind at the time; however, he *failed to investigate* to see if what w[a]s being claimed was true. Plaintiff states it was not.
>
> . . .

> 17. Officer Newton[,] just as Officer Woodward[,] made the arrest and was armed with the same information; both share the same responsibility because they committed the exact same acts. Both are liable to the Plaintiff under the [c]onspiracy theory and the actual violations of Title 28 U.S.C. §§ 1983 and 1985.

(DE 11 ¶¶ 14-15, 17 (emphases added).) Plaintiff further responds:

> 43. Defendants fail[ed] to properly investigate in this matter; had the[y] done so, it would have been revealed that it never happen[ed].

> 44. There was clearly false arrest/false imprisonment; Plaintiff never committed any of the acts alleged in this case.

> 45. Through evidentiary hearing, Plaintiff can undoubtedly prove that he was in bed [a]sleep when all the events occurred on May 09, 2014 for which he was arrested[].

> 46. Defendants did inflict intentional emotional distress upon the Plaintiff through their acts and omissions; if it was not intentional, was it accidental?

(DE 11 ¶¶ 43-46.)

Leaving aside the issue of qualified immunity, the Court should conclude that Plaintiff has not stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Initially, as noted earlier with regard to Defendant King, to the extent Plaintiff intends to bring a false accusation or conspiracy claim against Defendants Woodward and Newton, paragraph 49 of Plaintiff's complaint is vague in describing the alleged "accusation" by Woodward and Newton, is conclusory, and does not allege a "class-based discriminatory animus." This cause is not aided by paragraph 50's assertion that Defendants "falsely imprison[ed] him for alleged violations . . . which he did not commit," nor is it aided by paragraph 51's allegation of "fraudulent and unfounded charges which denied Plaintiff his liberty." It is likewise not aided by paragraph 55's general assertion that "all Defendants named in this action, through their action or inactions, did in fact violate[] the Plaintiff's Constitutional Rights by falsely imprisoning and tor[tur]ing him . . . ." These paragraphs do not sufficiently allege a false accusation or conspiracy claim against King as to which relief may be granted.

As to Plaintiff's claims that he was falsely imprisoned, the Court begins with the Supreme Court's direction that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v.*

*McCollan*, 443 U.S. 137, 145 (1979). "To establish a claim for false arrest, false imprisonment, or malicious prosecution, Plaintiff must show the absence of probable cause." *Hardesty v. City of Ecorse*, 623 F. Supp. 2d 855, 862 (E.D. Mich. 2009) (citing state court cases). "In determining whether probable cause existed, this Court 'consider[s] whether there are facts that, given the factual and practical considerations of everyday life, could lead a reasonable person to believe that an illegal act has occurred or is about to occur.'" *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012) (quoting *United States v. Strickland,* 144 F.3d 412, 416 (6th Cir.1998)). In other words, "probable cause" to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009).

Here, the Court should dismiss Plaintiff's claims of false arrest / false imprisonment against Defendants Woodward and Newton. To begin, although he responds that "[t]here was not probable cause to arrest [him] in this case[,]" "if so, it would have been for sleeping in his bed at his home[,]" "Defendant['s] [or Defendants'] actions were not legal, reasonable or proper[,]" and "Plaintiff never

committed any of the acts accused of[,]" (DE 11 ¶¶ 56-57), Plaintiff does not mention probable cause in his complaint (DE 1-1 at 3-12).

Furthermore, to the extent Plaintiff's complaint intended to allege that Defendants Woodward and Newton improperly investigated before arresting him (*see*, *i.e.*, DE 1-1 ¶ 52), such claim is unavailing.  To be sure, Plaintiff makes seeming allegations of innocence within his complaint – such as the arrest report's documentation that "[t]he arrestee denied ever assaulting the victim or even possessing a weapon . . .[,]" or that Plaintiff told the arresting officer, "I didn't touch that women[,]" (DE 1-1 ¶¶ 42, 45, DE 3-3 at 2-3, DE 8-4 at 2-3) – and within his response – such as his allegation that "Plaintiff duly advised Officer Woodward that he did not commit the offense that his wife was charging, but [Woodward] arrested the Plaintiff anyway[,]" (DE 11 ¶ 14; *see also* DE 11 ¶ 34). Nonetheless, to the extent Plaintiff claims Defendants Woodward and Newton were required to investigate his assertions of innocence, the Sixth Circuit has provided the following guidance:

> A suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers are entitled to take into consideration in making the determination whether probable cause to arrest exists.  *See* 2 *Search & Seizure* § 3.6(a), at 32.  A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.  *But see Filer v. Smith,* 96 Mich. 347, 355, 55 N.W. 999, 1002 (1893) ("[a]n officer is not warranted in relying upon circumstances deemed by him suspicious,

> when the means are at hand of either verifying or dissipating those suspicions without risk"). . . . To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.' And if the arresting officer failed to investigate such claims prior to arrest, the arrestee could bring a section 1983 suit.

*Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).[10]

The DPD arrest report narrative, most of which is quoted in Plaintiff's complaint, indicates that Defendants Woodward and Newton were not required "to forego arrest pending further investigation . . . ." *Criss*, 867 F.2d at 263. "A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (case citations omitted). "An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Id.* (quotations and citations omitted).

---

[10] As the Supreme Court observed in, *Baker v. McCollan,* 443 U.S. 137, 145–46 (1979), albeit in the context of an arrest warrant, "Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury."

Although Plaintiff admits the arrest report differs at least in part from his version of the events underlying the complaint (DE 1-1 ¶ 38), the arrest report narrative documents the officer's or officers' interviews with Plaintiff (arrestee), as well as with the victim (Ann Celeste Word), and witness No. 1 (their son, Demetrius Conway).  (DE 1-1 ¶¶ 42-44, DE 3-3 at 2-3, DE 8-4 at 2-3.)  Among other things, the report reflects the officer's or officers' impression(s) that the arrestee and victim "appeared intoxicated."  (*See also* DE 1-1 at 7 ¶¶ 42, 43.)  In addition, the report notes that Plaintiff had a "possible cigarette burn on [the] bottom right side of [his] neck," and the victim had a swollen left eye, a scratched and bleeding left big toe, and dried blood on the instep of her right foot.  (*See also* DE 1-1 at 8 ¶ 46.)  Moreover, the police were drawn to the house on the report that a "woman says [her] husband [is] armed with a gun [and] threatening her[,]" and the victim allegedly told the police that Plaintiff "was waiving that gun around in our bedroom, and he hit me in the face."  (*See also* DE 1-1 ¶¶ 40, 43).

Furthermore, the facts pleaded *in the body of the complaint itself* show probable cause, namely: that Plaintiff's wife "appeared to have been beat up or in some type of fight" and was "lying on the gro[und] in front of the house[,]" Plaintiff saw his sister-in-law and brother-in-law coming down the block, as two police cars were coming "from opposite ends of the block[,]" and Plaintiff's brother-in-law was yelling at him to "stop beating on my sister."  (DE 1-1 at 5 ¶¶

17-22.)  It was "[*a*]*t this point* [that] two police officers exited the cars and hand

cuffed the Plaintiff and put him in the squad car, placing him under arrest." (*Id.* at ¶

23) (emphasis added).  Thus, the scene which confronted the officers upon their

arrival, as described in the complaint itself and taken as true, clearly demonstrates

that "the facts as initially discovered provide[d] probable cause." *Criss*, 867 F.2d

at 263.  (*See also* DE 1-1 ¶¶ 40-47, DE 3-3, DE 8-4 at 2-3.)

### 4.    Defendants City of Detroit, Duggan and DPD (DE 3)

### a.    Defendant DPD is entitled to dismissal.

Plaintiff describes the DPD as "an entity within the Governmental structure

of the City of Detroit[,] Michigan . . . ."  (DE 1-1 ¶ 2.)  He claims that the DPD is

liable to him "for the abuse, physical and emotional distress caused by its

employees under the color of law against the Plaintiff."   (DE 1-1 ¶ 57.)

Tangentially, Plaintiff requests damages for being "falsely imprisoned, falsely

arrested and tortured at the hands of the [DPD]."  (DE 1-1 ¶ 60.)

"A municipal police department is not a legal entity separate from its parent

city." *Damron v. Pfannes*, 785 F. Supp. 644, 646 (E.D. Mich. 1992).  Plaintiff

seems to acknowledge this, as his complaint states that the DPD "is an entity

within the Governmental structure of the City of Detroit[,] Michigan[.]"  (DE 1-1 ¶

2.)  Instead, the City of Detroit is the proper party to address Plaintiff's claims

against the DPD.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)

("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."). As such, Defendant DPD is entitled to dismissal from this lawsuit on the basis that it is an improperly named party. *See also McClendon v. City of Detroit, et al.*, Case No. 2:04-cv-71829-GCS-RSW (E.D. Mich. Aug. 5, 2004) (opinion and order granting DPD's motion to dismiss).

### b.     The City of Detroit is entitled to dismissal.

Plaintiff claims that Defendant City of Detroit failed to properly train its employees "in investigation techniques to avoid arresting and torturing innocent citizens[,]" and "in the arts and methods of Constitutional Police practices." (DE 1-1 ¶¶ 52, 56.) (*See also* DE 1-1 ¶ 57.) Defendants argue that Defendant City of Detroit should be dismissed for Plaintiff's failure to satisfy the requirements of Fed. R. Civ. P. 8, *Twombly* and *Iqbal*. (DE 3-1 at 10-12.) Specifically, Defendants allege that the complaint "does not identify a single allegation of wrongdoing, or an averment of fact, relevant to the City of Detroit . . . [.]" (DE 3-1 at 12.)

Plaintiff's complaint does not allege a "failure to train" claim against Defendant City of Detroit that withstands Fed. R. Civ. P. 12(b)(6). Preliminarily, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691

23

(1978).  "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-695).  Thus, Plaintiff's claim that Defendant City of Detroit is liable "for the abuse, physical and emotional distress *caused by its employees* under the color of law . . .[,]" (DE 1-1 ¶ 57 (emphasis added)), is not, by itself, enough to allege liability against Defendant City of Detroit.

In addition, while Plaintiff alleges that Defendant City of Detroit "failed to properly train its employees," which violated the law and caused him injury (*see* DE 1-1 ¶¶ 52, 56), Plaintiff has not alleged a "policy or custom" that caused the alleged "constitutional deprivation."  As the Supreme Court has explained, the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Canton*, 489 U.S. at 385.  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *Id.* at 389.  In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a

municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.*

As noted above, Plaintiff's claim against the City of Detroit is that it failed to properly train its employees, presumably the Defendant police officers. (DE 1-1 ¶¶ 52, 56.) "*Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *Canton*, 489 U.S. at 389. Moreover:

> [t]he issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. *But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.* In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Canton*, 489 U.S. at 390 (footnotes omitted) (emphasis added). The focus "must be on adequacy of the training program in relation to the tasks the particular officers must perform[,]" and "for liability to attach in this circumstance the

identified deficiency in a city's training program must be closely related to the ultimate injury." *Id*. at 390-391.

Here, Plaintiff does not mention a "custom" or "policy" and only mentions that Defendant City of Detroit failed to properly train its employees "in investigation techniques to avoid arresting and torturing innocent citizens[,]" and "in the arts and methods of Constitutional Police practices." (DE 1-1 ¶¶ 52, 56.) These statements are akin to a claim that "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,]" which the Supreme Court has stated will not suffice. *Canton*, 489 U.S. at 391. As Defendants correctly point out, Plaintiff has not identified "policies, practices, and/or customs" created by Defendant City of Detroit that "may have a causal connection to Plaintiff's alleged injuries[,]" nor has Plaintiff made any allegations that "there was a need for training so obvious, and a training inadequacy so likely to cause a constitutional violation, that an inference of deliberate indifference may be reached[.]" (DE 3-1 at 10-11 ¶¶ 3, 6.)[11]

---

[11] I note that Plaintiff's "seventh cause of action," is brought against "all Defendants named in thi action . . . ." (DE 1-1 ¶ 55.) However, consistent with the foregoing analysis as to Defendants King, Woodward and Newton, the general assertion that "all Defendants named in this action, through their action or inactions, did in fact violate[] the Plaintiff's Constitutional Rights by falsely imprisoning and tor[tur]ing him . . .[,]" does not, alone, sufficiently allege a false

### c.   Defendant Duggan is entitled to dismissal.

Plaintiff pleads that Michael Duggan is "the Chief Executive Officer for the City of Detroit[,] Michigan and Respondeat Superior over the [DPD]."  (DE 1-1 ¶ 3.)  In fact, Mike Duggan is currently the Mayor of the City of Detroit.  (*See* http://www.detroitmi.gov.)

The above description is the only place in the complaint in which Mayor Duggan is expressly mentioned, thus solidifying the conclusion that Plaintiff's only intent is to name Mayor Duggan on the basis of *respondeat superior*.  As noted above, "Section 1983 will not support a claim based on a *respondeat superior* theory of liability."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell*, 436 U.S. at 694).  "Because § 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 80–81 (6th Cir.1995)).  Although the complaint in some cases makes use of "defendants" plural (*see* DE 1-1 ¶¶ 50, 51, 55), the complaint does not allege that the Mayor of the City of Detroit was personally involved in the events underlying the complaint, and Mayor Duggan is entitled to dismissal of the claims against him.

### E.   Conclusion

imprisonment, excessive force or conspiracy claim against the City of Detroit as to which relief may be granted.

For the reasons stated above, the Court should grant Defendants City of Detroit, Michael Duggan and Detroit Police Departments' May 5, 2016 joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (DE 3) and dismiss Plaintiff's claims against these defendants. (Section II.D.4.) In addition, the Court should grant Defendants Woodward, Newton and King's May 20, 2016 joint motion to dismiss in lieu of an answer (DE 8) and dismiss Plaintiff's claims against these defendants. (Section II.D.3.)[12]

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

---

[12] As this report only concerns the dispositive motions of Defendants City of Detroit, Duggan, DPD, Woodward, Newton and King, this report does not address Plaintiff's claims against any other defendants, such as the four apparently related defendants – Plaintiff's wife (Ann Conway), sister-in-law (Michelle Bradford), brother-in-law (Perry Conway) and son (Demetrius Conway) (DE 1-1 ¶¶ 49-51, 55) - or the "four unidentified officers" – presumably jail officials who allegedly tasered and restrained Plaintiff and denied him food, water and the use of a bathroom at the DDC (DE 1-1 ¶¶ 29-33, 53, 54 & 59).

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: January 23, 2017               s/Anthony P. Patti
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record
on Monday, January 23, 2017, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager for the
                                      Honorable Anthony P. Patti